# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

RICHARD LUTHMANN,

     Plaintiff,

v.                                    Case No. 2:21-cv-716-JES-NPM

FEDERAL BUREAU OF
INVESTIGATION and UNITED
STATES DEPARTMENT OF
JUSTICE,

     Defendants.

_____/

## Defendants' Motion for Summary Judgment

Defendants Federal Bureau of Investigation ("FBI") and United States Department of Justice ("DOJ") move for summary judgment.

### Undisputed Statement of Material Facts

1.    This is a Freedom of Information Act ("FOIA") case. (Doc. 34 at 1).

2.    Luthmann requested records related to a criminal investigation and prosecution. (Doc. 34 at 3).

3.    Specifically, he sought the following records:

All materials in any way related to the above-referenced RICHARD LUTHMANN, defendant in the matter of United States v. Luthmann, 17-CR-664 (E.D.N.Y.). This includes all materials related in any way into the investigation in the above-referenced matter as well as any evidence and/or notes collected at interviews with third-parties (including but not limited to Guy Cardinale and Robert Castro) related to the above-referenced matter.

Doc. 34-2 at 2).

3.      FBI considered the FOIA request. (Ex. 1, FBI Decl. at 3-9).

4.      After some preliminary back-and-forth, the parties participated in rolling production of responsive documents. (*Id.*).

5.      In all, Defendants identified 4,641 pages as responsive to Luthmann's request. (*Id.* at 68); (Ex. 6, *Vaughn* at 1).

6.      FBI released 170 pages in full and 657 pages in part. FBI withheld 3,814 pages in full. (Ex. 1, FBI Decl. at 68); (Ex. 6, *Vaughn* at 1).

7.      Of the records withheld in full, 234 pages were duplicates of other documents produced and 244 are sealed by court order. (Ex. 1, FBI Decl. at 68); (Ex. 6, *Vaughn* at 1).

8.      The remaining 3,336 pages withheld in full, along with the 657 pages withheld in part, had applicable FOIA Exemptions. (Ex. 1, FBI Decl. at 68); (Ex. 6, *Vaughn* at 1).

9.      FBI consulted with four other agencies about possible Exemptions those agencies might claim. (Ex. 1, FBI Decl. at 66-67).

10.     The other agencies were DOJ, Criminal Division ("CRM"); Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"); Department of Commerce ("Commerce"); and DOJ, Executive Office for United States Attorneys ("EOUSA"). (*Id.*).

**LEGAL STANDARD**

Summary judgment has a well-known standard:

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

*Rood v. Town of Fort Myers Beach, Fla.*, 622 F. Supp. 3d 1217, 1226 (M.D. Fla. 2022).

This basic standard applies in FOIA cases too. *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). And generally, "FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified and after the government has supplied affidavits or other information describing the documents." *Sikes v. Navy*, 896 F.3d 1227, 1239 (11th Cir. 2018) (cleaned up).

## DISCUSSION

This is a voluminous FOIA case. And the Declarations provided explain the withholdings in great detail. To save the Court's resources, Defendants will not merely recite what the Declarations thoroughly justify. Instead, this Motion is a legal roadmap to guide the Court through the Declarations, clarify summary judgment is proper, and point to the portions of each Declaration that explain why. To the extent that the Court requires further information, Defendants are happy to provide withheld documents or supplemental affidavits for *in camera* inspection.

The analysis proceeds in seven broad parts: Defendants explain why (1) a privacy *Glomar* response applies; (2) the searches were adequate; (3) the Privacy Act does not apply; (4) various FOIA exemptions apply to many of the responsive records;

(5) Defendants addressed the foreseeable harms; (6) Defendants disclosed all nonexempt information to the extent it was segregable; and (7) a standard *Glomar* response is included.

## I.    *Glomar* Response

FBI asserts a partial privacy *Glomar* response to the request as it relates to specific third-party individuals—Guy Cardinale and Robert Castro. (Ex. 1, FBI Decl. at 9-12).

"Instead of searching for and withholding exempt records, an agency may issue a *Glomar* response, *i.e.*, refuse to confirm or deny the existence or nonexistence of responsive records if the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents." *Project for Privacy and Surveillance Accountability, Inc. v. DOJ*, 633 F. Supp. 3d 108, 114 (D.D.C. 2022) (cleaned up). "It is the FBI's long-standing policy to provide a *Glomar* response—consistent with FOIA's privacy exemptions 6 and 7(C)—when third-party records are requested without either a privacy waiver or proof of death, or the demonstration of an overriding public interest in disclosure." *Casey v. FBI*, 302 F. Supp. 3d 209, 212 (D.D.C. 2018) (cleaned up); *see also* (Ex. 1, FBI Decl. at 10-11). "When addressing an agency's *Glomar* response, courts must accord substantial weight to agency determinations." *Lindsey v. FBI*, 271 F. Supp. 3d 1, 5 (D.D.C. 2017).

Courts regularly accept *Glomar* responses "if confirming or denying the existence of the records would associate the individual named in the request with

4

criminal activity." *Eddington v. DOJ*, 581 F. Supp. 3d 218, 235 (D.D.C. 2022) (citation omitted). "This is because the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Id.* (cleaned up). "Indeed, there can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of a law enforcement investigation." *PETA v. NIH*, 745 F.3d 535, 541-42 (D.C. Cir. 2014) (cleaned up).

A full discussion of the legal analysis regarding Exemptions 6 and 7(C) is in Section IV.D. below. Here, it is enough to note Exemption 7(C) requires records for a law enforcement purpose and a balancing of individual privacy interests with the public interest. *Davis v. DOJ*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

The request sought FBI records related to a criminal investigation and resulting prosecution of Luthmann. (Doc. 34 at 3). Any records which might exist would clearly be for a law enforcement purpose. (Ex. 1, FBI Decl. at 11-12).

As it relates to interest balancing, the analysis favors a *Glomar* response. This request sought records related to Cardinale and Castro. (*Id.* at 9-10). Yet FBI received no privacy waiver for those individuals. (*Id.* at 11). Nor was there any evidence those people are dead. (*Id.*) So Cardinale and Castro have significant privacy interests at stake. (*Id.*). Any public interest here is insufficient to outweigh the privacy interests. (*Id.* at 11-12).

As Exceptions 6 and 7(C) would necessarily apply to any records (which may or may not exist), FBI follows its policy to apply a privacy *Glomar* for records of third-parties related to a criminal investigation. (*Id.* at 9-12). Under the circumstances, a *Glomar* response is proper. *E.g.*, *Eddington*, 581 F. Supp. 3d at 235-36.

## II.    Search Adequacy

In a FOIA case, the agency must establish adequacy of its search for documents. *Broward Bulldog, Inc. v. DOJ*, 939 F.3d 1164, 1176 (11th Cir. 2019). To do that, it "must show beyond a material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Id.* (citation omitted). "The agency may meet this burden by producing affidavits of responsible officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Id.* (cleaned up). "If the agency satisfies this burden, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." *Id.* (cleaned up).

The touchstone is "reasonableness," so FOIA "does not require an agency to exhaust all files which conceivably could contain relevant information." *Id.* (cleaned up). It follows then that "a requester cannot rebut a showing of an adequate search by arguing that he received only a subset of the documents that he thought existed." *Id.*

Here, FBI made reasonable searches. FBI detailed the process it used to search for the records Luthmann requested. (Ex. 1, FBI Decl. at 12-16). This included a search of FBI's Central Records System ("CRS"), which encompasses FBI investigative

6

records worldwide. (*Id.*). And Luthmann provided no information to suggest it would be reasonable to search outside that system. (*Id.*).

When—as here—FBI provides a detailed declaration explaining the underlying system and search parameters, "Courts have repeatedly upheld index searches of CRS to be adequate." *Gizmodo Media Grp., LLC v. FBI*, 366 F. Supp. 3d 585, 560 (S.D.N.Y. 2019). With no indication otherwise, the search of CRS was adequate. *Cato Inst. v. FBI*, 638 F. Supp. 3d 13, 20 (D.D.C. 2022) (holding "FBI has therefore conducted an adequate search using CRS alone").

### III.    Privacy Act

When individuals file FOIA requests about themselves, FBI first considers the request under the Privacy Act. (Ex. 1, FBI Decl. at 16-17). In general, the Privacy Act grants people a right to records related them—unless an Exemption applies. *Emery v. DOJ*, 639 F. Supp. 3d 104, 114 (D.D.C. 2022). Exemption (j)(2) "allows law enforcement agencies to promulgate rules to exempt criminal records systems from these individual access provisions, if the records contain information compiled for the purpose of a criminal investigation." *Id.* (cleaned up). FBI "exercised that authority to exempt its Central Records System from the individual access provisions of the Privacy Act." *Id.*; *see also* 28 C.F.R. § 16.96.

The records FBI located in this case relate to its law enforcement mission. (Ex. 1, FBI Decl. at 16-17). Specifically, they were compiled during the course of investigation and prosecution of Luthmann for wire fraud and extortion. (*Id.*). And

they are contained within the CRS—which is exempt from the Privacy Act. (*Id.*). So there is no right to the records under the Privacy Act. *Lee v. FBI*, 172 F. Supp. 3d 304, 307-08 (D.D.C. 2016).

Similarly, the records EOUSA reviewed are exempt from disclosure under the Privacy Act. (Ex. 4, EOUSA Decl. at 4-5). Even though the Privacy Act does not require disclosure, Defendants considered the request under FOIA for maximum disclosure. (Ex. 1, FBI Decl. at 17).

## IV.   FOIA

Defendants claim several FOIA Exemptions for withheld documents. Before justifying them, some FOIA background is helpful.

## A.   FOIA Background

"After an agency receives a request for records, it may withhold information from responsive documents only if it falls within one of nine statutory exemptions." *Broward Bulldog*, 939 F.3d at 1175. FOIA "expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of the Act's purposes and policies as its disclosure requirement." *Id.* (cleaned up). Put differently, there is no basis to construe FOIA's Exemptions liberally or narrowly in favor of disclosure; instead, courts "have no license to give statutory exemptions anything but a fair reading." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up).

With that law in mind, the Exemptions follow.

**B.     Exemption 3**

FBI, EOUSA, CRM, and Commerce claimed Exemption 3 to withhold information protected by statute. "Exemption 3 covers records that are specifically exempted from disclosure by statute." *Brown v. FBI*, 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (citation omitted). To qualify for the Exemption, the statute must (1) require withholding in a way "as to leave no discretion on the issue" or (2) establish specific withholding criteria or refer to specific matters withheld. 5 U.S.C. § 552(b)(3)(A)(i)-(ii).[1]

The Government addresses each category of records or information that was statutorily prohibited from disclosure. In doing so, Defendants need not identify any foreseeable harm (as explained in Section V. below).

*1.     Grand Jury Information*

Courts recognize "requests for documents related to grand jury investigations implicate FOIA's third exemption." *Murphy v. EOUSA*, 789 F.3d 204, 206 (D.C. Cir. 2015) (cleaned up). Grand jury information is properly withheld "if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses." *Id.* (citation omitted). And "the basis for invoking exemption 3 need only be logical or plausible." *Id.* at 211 (cleaned up).

---

[1] All relevant statutes here predate the Open FOIA Act of 2009. So none must specifically cite Exemption 3. 5 U.S.C. § 552(b)(3)(B).

a.    FBI (b)(3)-1

Here, FBI claimed Exemption 3 under Federal Rule of Criminal Procedure 6(e), which demands grand jury secrecy. (Ex. 1, FBI Decl. at 20-21). Responsive records here contained the following information related to the grand jury: names of subpoena recipients, information identifying subpoenaed records, and copies of subpoenaed records. (*Id.* at 21). These records fell into two buckets—Categories A and B. (*Id.*).

Category A included FBI records of interviews and summaries related to individuals the grand jury subpoenaed at testify. (*Id.* at 21-22). These records specifically identify witnesses and the information sought. (*Id.*). That information reveals the grand jury's investigation. (*Id.*). Category B included grand jury subpoena requests and returns, along with documents analyzing and summarizing subpoenaed information. (*Id.* at 22). That information reveals the grand jury's investigation. (*Id.*).

b.    EOUSA

EOUSA also withheld the application, order, and attachments containing the basis for issuing a wiretap as documents presented to the grand jury. (Ex. 4, EOUSA Decl. at 5-7). For the same reasons as Section IV.B.1.a. above, that was proper.

Since Exception 3 prohibits disclosure of the grand jury information described above, Defendants properly redacted or withheld it. Fed. R. Crim. P. 6(e); *Boehm v. FBI*, 983 F. Supp. 2d 154, 159-60 (D.D.C. 2013).

2.    *Pen Registers—FBI (b)(3)-2 and EOUSA*

Pen register information is typically exempt under Exemption 3 given the Pen Register Act. *Labow v. DOJ* (*Labow I*), 831 F.3d 523, 527-28 (D.C. Cir. 2016). To get a

pen register requires a court order; those orders are categorically exempt from FOIA. *Id.* Information related to a pen register may also be exempt. *Labow v. DOJ* (*Labow 2*), 278 F. Supp. 3d 431, 440-41 (D.D.C. 2017). Specifically, information related to a pen register is protected when Congress "recognized a danger associated with its disclosure." *Id.* at 441. "In other words, if disclosure of the information would necessarily compromise the pen register order, its release would run afoul Congress's intent in calling for those orders to be sealed in the first place." *Shapiro v. DOJ*, No. 12-cv-313 (BAH), 2020 WL 3615511, at *25 (D.D.C. July 2, 2020) (cleaned up).

Here, the information withheld included the identities and phone numbers of those targeted by the pen register, the location of the pen register, information gathered by the register, and court documents relating to approval of the register. (Ex. 1, FBI Decl. at 22-23); (Ex. 4, EOUSA Decl. at 7-8). This information was "properly withheld under Exemption 3" since it was "tantamount to revealing the order itself." 18 U.S.C. § 3123; *Shapiro*, 2020 WL 3615511 at *25.

3.      *Wiretap Information—FBI (b)(3)-3, EOUSA, and CRM*

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 governs "federal law enforcement wiretaps." *Ewell v. DOJ*, 153 F. Supp. 3d 294, 304 (D.D.C. 2016). In doing so, it prohibits disclosure of wiretap information. *Id.* So courts hold "intercepted communications obtained pursuant to a Title III wiretap fall squarely within the scope of Exemption 3." *Id.* (cleaned up). That protection extends "to the application for a wiretap and all supporting materials submitted to the court to obtain a Title III wiretap." *House v. DOJ*, 197 F. Supp. 3d 192, 206 (D.D.C. 2016).

Here, the information withheld was the application, order, attachments, identities of wiretap targets, and the information obtained. (Ex. 1, FBI Decl. at 24-25); (Ex. 4, EOUSA Decl. at 7-8). CRM also withheld materials included with prosecutors' application for court authorization to intercept wire communications. (Ex. 5, CRM Decl. at 3-6). FBI, EOUSA, and CRM were required to withhold that information. 18 U.S.C. §§ 2510-2521; *Roberts v. FBI*, 845 F. Supp. 2d 96, 101-02 (D.D.C. 2012).

4.      *Intelligence Information—FBI (b)(3)-5*

The National Security Act demands the Director of National Intelligence "protect" all "intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). This authority was delegated to agency heads in the "Intelligence Community"—including FBI. *Elec. Privacy Info. Ctr. v. DOJ*, 296 F. Supp. 3d 109, 120-21 (D.D.C. 2017). "There is thus no doubt that [this provision] is a proper exemption statute under exemption 3." *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990). Courts construe this statue "broadly to protect information that *relates* to intelligence sources and methods and information which can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Khatchadourian v. DIA*, 453 F. Supp. 3d 54, 87 (D.D.C. 2020).

Here, FBI determined it would reveal intelligence sources and methods by disclosing the withheld information. (Ex. 1, FBI Decl. at 25-26). So withholding that information was appropriate. 50 U.S.C. § 3024(i)(1); *Elec. Privacy*, 296 F. Supp. 3d at 121-22.

5.      *Bank Records—FBI (b)(3)-6*

The Bank Secrecy Act ("BSA") exempts records from FOIA disclosure. 31 U.S.C. § 5319. So it is "contemplated by Exemption 3." *Yunes v. DOJ*, 263 F. Supp. 3d 82, 86-87 (D.D.C. 2017) (citation omitted). This protection extends to BSA records collected and maintained by the Financial Crimes Enforcement Network (FinCEN), which supports law enforcement investigations. *Ortiz v. DOJ*, 67 F. Supp. 3d 109, 118 (D.D.C. 2014).

Here, during the criminal investigation of Luthmann, BSA information was obtained from FinCEN. (Ex. 1, FBI Decl. at 26-28). FBI is required to withhold that information from disclosure. 31 U.S.C. § 5319; *Yunes*, 263 F. Supp. 3d at 87.

6.      *Export Control Enforcement Information—Commerce*

"Information submitted or obtained in connection with an enforcement activity, or other operations under this subchapter, including . . . information or evidence obtained in the course of any investigation," is exempt from disclosure. 50 U.S.C. § 4820(h)(1). That statute's predecessor—section 12(c) of the Export Administration Act of 1979—"was enacted to prevent the release of information that could damage exporters and, in turn, the country's balance of trade." *Times Pub. Co. v. Commerce*, 236 F.3d 1286, 1290 (11th Cir. 2001). As currently enacted, the statute contains more categories of exempt information—including information obtained in connection with an enforcement activity of export control laws. 50 U.S.C. § 4820(h)(1)(B)(iv).

Commerce withheld Reports of Investigation, which were compiled by its Office of Export Enforcement of Bureau of Industry and Security. (Ex. 2, Commerce

Decl. at 2). The reports contained notes of interviews that occurred in connection with an investigation of a company for potential violations of export control laws and regulations. (*Id.* at 2-4). Withholding the information was, therefore, required by Exemption 3.

### 7.    Conclusion

As stated, the Court must grant summary judgment as to Exemption 3.

## C.    Exemption 5

FBI and CRM claimed Exemption 5 to protect privileged deliberative process documents. Specifically, FBI withheld internal deliberative communications and handwritten interview notes by FBI agents. (Ex. 1, FBI Decl. at 28-33). Some documents were also protected by the attorney-client and work-product privileges. (*Id.* at 33-34); (Ex. 5, CRM Decl. at 6-9). In sum, these documents reflect privileged, predecisional deliberation in developing and reaching final agency decisions.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It "includes a 'deliberative process privilege' that is designed both to minimize public confusion about agency rationales and actions and to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Broward Bulldog*, 939 F.3d at 1194 (cleaned up). This "privilege protects only deliberative materials—that is, materials that are a direct part of the deliberative process in that they make recommendations or express opinions on legal or policy matters." *Id.* at 1195 (cleaned up).

14

"Material must also be predecisional to fall under the privilege. To be predecisional, information must be prepared in order to assist an agency decision-maker in arriving at his decision." *Id.* (cleaned up). And "the record must bear on the formulation or exercise of policy-oriented judgment." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1278 (11th Cir. 2004). What's more, "Exemption 5 encompasses materials that would be protected under the attorney-client privilege, the attorney work-product privilege, and the executive deliberative process privilege." *Spears v. DOJ*, 139 F. Supp. 3d 79, 89 (D.D.C. 2015).

FBI takes each category of deliberative process material in turn.

1.   *Deliberative Communications—FBI (b)(5)-1 and CRM*

FBI protected interagency deliberations including feedback, proposals, and discussions on final agency action. (Ex. 1, FBI Decl. at 30-31). Specifically, the deliberations were between FBI, a United States Attorney's Office ("USAO") and Assistant United States Attorney ("AUSA"). (*Id.*). These internal discussions covered investigations, indictments, prosecutions, and trials. (*Id.*). The respective agencies deliberated on things like (1) searching for evidence and how it may be used in a criminal case, (2) strategizing about a trial witness and testimony, and (3) discussing legal strategies legal strategies related to Luthmann's criminal case. (*Id.*).

What's more, CRM withheld materials prepared by and exchanged between lawyers within CRM and a USAO, as part of a criminal investigation regarding approval of wiretaps. (Ex. 5, CRM Decl. at 6-7).

The conversations were preindictment (discussing things like how evidence might be used), pretrial (discussing things like use of trial witnesses), and preaction (strategizing legal avenues to possibly pursue). In other words, these communications were all predecisional. And they do not reflect final agency decisions. Prosecutors and law enforcement must be free to have open and frank discussions about pursuing criminal charges without the worry of disclosing those communications. *E.g.*, *Rodriguez v. FBI*, No. 16-cv-02465 (APM), 2018 WL 6591659, at *2-3 (D.D.C. Dec. 14, 2018); *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 140-41 (D. Mass. 2014).

It follows then that communications between prosecutors (like a USAO and their AUSAs) about building criminal cases are general protected as deliberative. *Spears*, 139 F. Supp. 3d at 89; *Ewell*, 153 F. Supp. 3d at 306-07. Those protections also extend to communications between AUSAs and FBI agents. *E.g.*, *Kolbusz v. FBI*, No. 1:17-cv-00319 (EGS/GMH), 2021 WL 1845352, at *15-17 (D.D.C. Feb. 17, 2021), *report and recommendation adopted* 2023 WL 2072481 (Feb. 17, 2023). So it is proper "to withhold meeting summaries and email exchanges between the FBI and AUSAs." *Id.* at *16; *see also Lazaridis v. DOJ*, 766 F. Supp. 2d 134, 143 (D.D.C. 2011).

In short, Exemption 5 protects deliberative communications related to litigation and prosecutorial strategy as privileged. *E.g.*, *Kolbusz*, 2021 WL 1845352, at *15-17; *Mermerlstein v. DOJ*, No. 19-CV-00312 (GRB)(JMW), 2021 WL 3455314, at *14 (E.D.N.Y. Aug. 4, 2021); *Reep v. DOJ*, 302 F. Supp. 3d 174, 184-85 (D.D.C. 2018). As

FBI and CRM explained, it was necessary to withhold such material here. (Ex. 1, FBI Decl. at 30-31); (Ex. 5, CRM Decl. at 6-8).

2.      *Handwritten Interview Notes—FBI (b)(5)-1*

FBI also protected handwritten notes its agent took during a witness interview. Law enforcement "interview notes and summaries are routinely found to be subject to Exemption 5." *Hardy v. ATF*, 243 F. Supp. 3d 155, 169 (D.D.C. 2017). Even to the extent that handwritten notes contain facts, they may still be exempt given their interrelation to the investigator's mental process. *Phillips v. ICE*, 385 F. Supp. 2d 296, 303 (S.D.N.Y. 2005). These "documents reflect an exercise of judgment as to what issues seemed most relevant to these inspectors to pre-decisional findings and recommendations." *Hardy*, 243 F. Supp. 3d at 169 (cleaned up).

The withheld notes were a draft of the agent's thoughts, impressions, interpretation, and judgment on the interview, which were later distilled into an official FD-302 interview report. (Ex. 1, FBI Decl. at 31-33). The FD-302 is the final agency action that follows an editorial process of determining what is necessary and pertinent to the investigation. (*Id.*) The notes, therefore, are predecisional and deliberative.

Requiring the disclosure of preliminary notes of an interview would have a chilling effect on notetaking. (*Id.*) As a result, the accuracy of FD-302 reports and effectiveness of broader investigations would suffer. (*Id.*) What's more, the release would reveal the mental impressions of investigators as they strategize and sort through information. (*Id.*) This would confuse the public by disbursing an agent's

17

preliminary thoughts about an ongoing investigation before the record of the interview is finalized in an FD-302. (*Id.*)

As FBI explains, the handwritten interview notes of a special agent were protected under Exemption 5. *Solers, Inc. v. IRS*, 827 F.3d 323, 330 (4th Cir. 2016).

### 3. *Attorney-Client Privilege—FBI (b)(5)-2*

FBI protected attorney-client privileged records. (Ex. 1, FBI Decl. at 33-34). Specifically, it withheld communications between DOJ and FBI lawyers, along with FBI employees, which were for the purpose of securing legal advice. (*Id.*). It is essential for prosecutors and law enforcement to have honest discussions about legal representation. (*Id.*). Just like any other attorney-client privileged communications, these records were properly withheld. *Kolbusz*, 2021 WL 1845352, at *15-17; *Reep*, 302 F. Supp. 3d at 184-85.

### 4. *Work Product—CRM*

The work-product privilege protects documents that reveal an attorney's mental impressions and legal theories and were prepared by the attorney in contemplation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947). To get protected, the record must "fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010). Unlike the deliberative process privilege, the work-product privilege encompasses factual materials that are contained in an otherwise privileged document. *Nadler v. DOJ*, 955 F.2d 1479, 1491-92 (11th Cir. 1992).

Here, CRM withheld materials created and exchanged internally—between CRM lawyers—and externally—between CRM and USAO lawyers. (Ex. 5, CRM Decl. at 6-7). These documents were created during investigations of individuals for violation of federal criminal law. (*Id.* at 7-8). The records were those attorneys' work product prepared in anticipation of litigation and bringing criminal charges. (*Id.* at 7-9). And violating that privilege would hinder future criminal prosecutions, which is central to CRM's mission. (*Id.* at 8-9). So CRM properly withheld the work product. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991).

5.  *Conclusion*

For those reasons, Exemption 5 applied and withholding of the identified information was appropriate.

**D.  Exemptions 6 and 7(C)**

FBI, EOUSA, and CRM claimed Exemptions 6 and 7(C) to protect against unwarranted invasion of personal privacy. This Motion focuses on the broader Exemption 7(C) since the records obviously qualify under it. *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). But the documents are also exempt under Exemption 6 for the same reasons. (Ex. 1, FBI Decl. at 35-36 & n.18). Under either Exemption, the information was properly withheld.

1.  *Law Enforcement Purpose Threshold*

To qualify for any of Exemption 7's provisions, the identified records were created "for law enforcement purposes." 5 U.S.C. § 552(b)(7). An agency must simply "establish a rational nexus between the investigation and one of the agency's law

enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998) (cleaned up).

FBI, CRM, and EOUSA contend the documents were created for law enforcement purposes.  (Ex. 1, FBI Decl. at 9, 34-35); (Ex. 4, EOUSA Decl. at 10-11); (Ex. 5, CRM Decl. at 9-10). That conclusion is entitled to deference. *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011). And it is obviously true as Luthmann seeks records related to his own criminal investigation, prosecution, and conviction. *Id.* This conclusion also applies to the Exemptions asserted in Sections E and F below and the *Glomar* discussion above.

Having concluded that threshold was met, we move to the 7(C) merits.

2.    *Exemption 7(C) Merits Analysis*

"Exemption 7(C) authorizes the Government to withhold law enforcement records that 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Blackwell*, 646 F.3d at 41 (cleaned up). This determination requires one to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis*, 968 F.2d at 1281. If the Government "identifies a privacy interest," then "the requester must show that the public interest sought to be advanced is a significant one, with an interest more specific than having the information for its own sake, and that the information is likely to advance that interest." *Behar v. DHS*, 39 F.4th 81, 91-92 (2d Cir. 2022).

20

"FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell*, 646 F.3d at 41. "Exemption 7(C) encompasses a strong privacy interest in the intimate details of an individual's life and information about an individual which he could reasonably assert an option to withhold from the public at large because of its possible adverse effects upon himself or his family." *Broward Bulldog*, 939 F.3d at 1183 (cleaned up). These privacy interests do not only extend to "the targets of law-enforcement investigations, but also witnesses, informants, and investigating agents have a substantial interest in ensuring that their relationship to the investigations remains secret." *Roth*, 642 F.3d at 1174 (cleaned up).

FBI, CRM, and EOUSA detailed how they carefully scrutinize and make these privacy determinations in each case. (Ex. 1, FBI Decl. at 35-37); (Ex. 4, EOUSA Decl. at 8-10); (Ex. 5, CRM Decl. at 9-11). Then, they explained how and why they made those decisions here in relation to each category of individuals. Luthmann cannot establish any public interest outweighs the weighty privacy interests. Nor can he show any type of governmental misconduct.

To explain why the withholdings were appropriate, the Government takes each category in turn.

a.    <u>FBI Agents and Staff—FBI (b)(6)-1 and (b)(7)(C)-1</u>

In general, it is appropriate to withhold the personal information of FBI agents and staff assigned to conduct specific investigations. *E.g.*, *Carpezzi v. DOJ*, No. 2:21-cv-180-JLB-KCD, 2023 WL 2648166, at *8 (M.D. Fla. Mar. 27, 2023) (Badalamenti, J.).

21

FBI staff are assigned to cases to carry out their duties—not by choice. (Ex. 1, FBI Decl. at 38-39). Disclosing their private information would hinder their performance and open them to retaliation. (*Id.*). The public has no interest in this information because it would not further an understanding of FBI's operation and activity. (*Id.*). The privacy interests outweigh any public interest that might exist. *Carpezzi*, 2023 WL 2648166, at *8.

b.   Third Party Provided Information—FBI (b)(6)-2 and (b)(7)(C)-2

The "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Blackwell*, 646 F.3d at 41 (citation omitted). Third parties who provided information to FBI have significant privacy interests. (Ex. 1, FBI Decl. at 40-41). Disclosing their identifying information would open them to a host of negative repercussions. (*Id.*). The public has no interest in this information because it would not further an understanding of FBI's operation and activity. (*Id.*). The privacy interests outweigh any public interest that might exist. *Brown v. FBI*, 873 F. Supp. 2d 388, 404 (D.D.C. 2012).

For most instances, Exemption 7(D) also applies to this category. Exemption 7(D) is explained fully within Section E. below.

c.   Third Party Mentioned—FBI (b)(6)-3, (b)(7)(C)-3, and CRM

The analysis in Section D.2.b. applies with greater force here. Third parties simply mentioned in records have a greater interest in privacy. (Ex. 1, FBI Decl. at 41); (Ex. 5, CRM Decl. at 9-11). The public has no interest in this information because it would not further an understanding of FBI or CRM's operation and activity. (*Id.*).

The privacy interests outweigh any public interest that might exist. *Davis*, 968 F.2d at 1281-82.

        d.    <u>Third Party Investigative Interest—(b)(6)-4, (b)(7)(C)-4, and CRM</u>

As with other third parties, individuals identified for investigative interest have an overwhelming interest in privacy. (Ex. 1, FBI Decl. at 42); (Ex. 5, CRM Decl. at 9-11). The public has no interest in this information because it would not further an understanding of FBI or CRM's operation and activity. (*Id.*). The privacy interests outweigh any public interest that might exist. *Spirko v. USPS*, 147 F.3d 992, 999 (D.C. Cir. 1998).

        e.    <u>Non-FBI Personnel —FBI (b)(6)-5, (b)(7)(C)-5, CRM, and ATF</u>

For the same reasons discussed in Section D.2.a., personal information of non-FBI federal employees was properly withheld. (Ex. 1, FBI Decl. at 42-43); (Ex. 2, Commerce Decl. at 3-5) (Ex. 3, ATF Decl. at 2); *Dillon v. DOJ*, 444 F. Supp. 3d 67, 99-101 (D.D.C. 2020).

        f.    <u>Local Law Enforcement—FBI (b)(6)-6, (b)(7)(C)-6, and ATF</u>

For the same reasons discussed in Section D.2.a., personal information of local law enforcement was properly withheld.  (Ex. 1, FBI Decl. at 43); (Ex. 3, ATF Decl. at 2); *Carpezzi*, 2023 WL 2648166, at *8.

        g.    <u>Local Government Personnel—FBI (b)(6)-11 and (b)(7)(C)-11</u>

For the same reasons discussed in Section D.2.a., personal information of local government employees was properly withheld. (Ex. 1, FBI Decl. at 44); *Radar Online*

*LLC v. FBI*, No. 17 Civ 3956 (PGG), 2023 WL 6122691, at *18-19 (S.D.N.Y. Sept. 19, 2023).

> h.    DOJ Personnel—EOUSA

For the same reasons discussed in Section D.2.a., personal information of DOJ personnel was properly withheld. (Ex. 4, EOUSA Decl. at 8-10); *Skinner v. DOJ*, 806 F. Supp. 2d 105, 113 (D.D.C. 2011).

> i.    Firearm Serial Numbers—ATF

The serial number of firearms can be connected to individual firearms owners. (Ex. 3, ATF Decl. at 2). Accordingly, ATF properly applied redactions to firearm serial numbers to prevent the disclosure of information identifying third parties. *Emery*, 639 F. Supp. 3d at 102.

> 3.    *Conclusion*

As stated, the Court must grant summary judgment as to Exemption 7(C).

## E.    Exemption 7(D)

FBI claimed Exemption 7(D) to protect confidential sources. This Exemption "protects two distinct types of information: (1) information that could reasonably be expected to disclose the identity of a confidential source; and (2) information furnished by a confidential source in the context of a criminal or national security investigation." *Shem-Tov v. DOJ*, 531 F. Supp. 3d 102, 108 (D.D.C. 2021) (cleaned up). "A source counts as confidential if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Labow 1*, 831 F.3d at 530 (cleaned up).

"When the government establishes that a source provided information under an assurance of confidentiality, Exemption 7(D) creates a per se limitation on disclosure." *Broward Bulldog*, 939 F.3d at 1188 (cleaned up). "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests." *Roth*, 642 F.3d at 1184.

To qualify for Exemption 7(D), the records or information must be "compiled for law enforcement purposes." *Shem-Tov*, 531 F. Supp. 3d at 108 (citation omitted). FBI met this threshold (as explained in Section D.1.). What's more, FBI explained the importance of Exemption 7(D) to the continued effectiveness of carrying out its mission. (Ex. 1, FBI Decl. at 45-46). Specifically, FBI needs the ability to guarantee confidentiality to sources who may not otherwise provide information for criminal investigations. (*Id.*).

To justify the Exemption, the Government takes each application separately.

### 1.  Source Symbol Numbers—FBI (b)(7)(D)-1

Courts protect the symbol numbers that FBI assigns its confidential sources. *Amuso v. DOJ*, 600 F. Supp. 2d 78, 99 (D.D.C. 2009). If FBI establishes disclosure of the symbol numbers "could reasonably be expected to disclose the identity of a confidential source," then the Exemption applies. *Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1194-95 (D. Colo. 2016).

Here, FBI explained it assigns permanent symbol numbers to confidential sources. (Ex. 1, FBI Decl. at 46-47). Sources with a symbol number are "under express assurances of confidentiality." (*Id.* at 46). It obtained information from confidential

sources during the investigation of Luthmann. (*Id.*) Disclosure of the symbol numbers would allow someone with knowledge of the events to determine the identity of the sources. (*Id.* at 46-47). So FBI properly redacted or withheld references to confidential source symbol numbers. *Amuso*, 600 F. Supp. 2d at 98-99.

2.    *Express Assurance—FBI (b)(7)(D)-3 and (b)(7)(D)-5*

FBI protected the names, identifiers, and other information of third parties who were under express assurances of confidentiality. (Ex. 1, FBI Decl. at 49-51). "To withhold information under Exemption 7(D) by express assurances of confidentiality, the FBI must present probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell*, 164 F.3d at 34 (cleaned up). "Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.*

Certain records relate to individuals who provided unique information and either expressly requested confidentiality or would have been offered it by FBI as a matter of standard practice. (Ex. 1, FBI Decl. at 49). FBI determined investigators granted assurances because the individuals were official FBI informants—whose relationship comes with a standard confidentiality assurance. (*Id.* at 50). Some sources were also identified by source symbol numbers, which is again an indicator of express assurances. (*Id.*) Likewise, the existence of source file numbers for filing information collected indicates status as an official informant. (*Id.*)

26

For FBI to carry out its mission, it must have the credibility to grant confidentiality to sources. (*Id.* at 49-50). And courts protect those assurances. *Petrucelli v. DOJ*, 51 F. Supp. 3d 142, 168-69 (D.D.C. 2014). So FBI properly withheld information related to individuals under express assurances of confidentiality. *Id.*

### 3.    Implied Assurance—FBI (b)(7)(D)-4

FBI protected the names, identifiers, and other information of third parties where an assurance of confidentiality can be implied. (Ex. 1, FBI Decl. at 47-49). "When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential." *Roth*, 642 F.3d at 1184 (cleaned up). Both "the nature of the crime investigated and the source's relation to it are factors relevant to determining whether implied confidentiality exists." *Petrucelli*, 51 F. Supp. 3d at 170 (cleaned up).

The "inference of implied confidentiality would be appropriate with respect to informants who, absent confidentiality, might be worried about possible retaliation because of the subject matter." *Ramaci v. FBI*, 568 F. Supp. 3d 378, 388 (S.D.N.Y. 2021) (citation omitted). So "courts are more willing to infer confidentiality in cases where the crimes at issue are particularly violent." *Id.* "And courts are similarly more willing to infer confidentiality where sources were close enough to the activities to provide detailed and singular information about them, since such singular information, if disclosed, could be reasonably traced back to the source." *Id.* (cleaned up).

27

Here, FBI carefully considered the relevant factors. (Ex. 1, FBI Decl. at 47-49). Specifically, the sources (1) provided singular, critical investigative information and disclosure would identify them; (2) were close to the investigative subjects and events giving them ready access to information; (3) were within the orbit of violent criminals and organized crime; and (4) provided information related to crimes of wire fraud and extortion. (*Id.*). Under the circumstances, cooperation with FBI exposed these sources to reprisals in many forms—reputational, economic, emotional, and physical (including murder). (*Id.*). In the face of such significant risks, the sources provided detailed, unique information to investigators. (*Id.*).

Considering all the facts, it was reasonable to infer these third parties cooperated under implied assurances of their confidentiality. (*Id.*). So FBI properly withheld information related to individuals. *Thelen v. DOJ*, 169 F. Supp. 3d 128, 141 (D.D.C. 2016); *Rosenberg v. ICE*, 13 F. Supp. 3d 92, 111-12 (D.D.C. 2014).

### 4.   Conclusion

For those reasons, Exemption 7(D) applies.

## F.   Exemption 7(E)

FBI claimed Exemption 7(E) to protect nonpublic sensitive law enforcement techniques and procedures, along with nonpublic details about techniques and procedures that may be publicly known. This Exemption allows withholding of law enforcement records if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

"Under Exemption 7(E), the phrase 'techniques and procedures' refers to how law enforcement officials go about investigating a crime." *Broward Bulldog*, 939 F.3d at 1191 (cleaned up). "The purpose of this exemption is to shield sensitive law enforcement techniques from disclosure to prevent criminals from circumventing future law enforcement investigations." *Id.* (cleaned up).

Exemption 7(E) sets a relatively low bar for the agency to justify withholding. *Blackwell*, 646 F.3d at 42. For instance,

> [it] looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

*Id.* (citation omitted). At bottom, the Exemption "only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* (cleaned up).

As shown below, each separate category is exempt on its own. But taken together, the withheld information also qualifies under Exemption 7(E) based on a mosaic theory. (Ex. 1, FBI Decl. at 65); *see also Whittaker v. DOJ*, No. 18-cv-01434 (APM), 2020 WL 6075681, at *5-6 (D.D.C. Oct. 15, 2020).

When—as here—a requester seeks a vast variety of information related to FBI techniques and methods, there is a significant risk to the disclosure. *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017). Specifically, "bits and pieces of data may aid

in piecing together bits of other information even when the individual piece is not of obvious importance in itself." *Id.* (cleaned up). "Thus, the only way to prevent anyone from constructing the broader 'mosaic' is to shield each individual piece from disclosure." *Whittaker*, 2020 WL 6075681, at *5.

In this section, each bit of data may be relatively small, and some might seem innocuous. But—taken together—these pieces form the entire complex mosaic of FBI criminal investigations into wire fraud and extortion. (Ex. 1, FBI Decl. at 65). As shown below, each category FBI protected is an essential part of the important investigations it regularly conducts in this area. So these data points provide a "playbook" for FBI investigations. (*Id.*). It would also offer a guide for criminals to frustrate and defeat these types of investigations. (*Id.*). In ample detail, FBI justified why this information must be withheld in order to prevent (at a minimum) some reasonable chance of disclosure risking circumvention of the law. (*Id.* at 51-65). The Court, therefore, should protect all discrete parts of the mosaic from improper disclosure. *Reporters Comm. for Freedom of the Press v. FBI* (*Reporters 1*), 199-202 (D.D.C. 2021).

Even if the Court disagrees with a mosaic theory, each category below was still subject to Exemption 7(E) withholding.

    1.    *Sensitive Investigative File Numbers—FBI (b)(7)(E)-1*

FBI's file numbering convention discloses important information about investigative interest, priority, location of origination, and program assignment. (Ex. 1, FBI Decl. at 51-54). To disclose that information—especially repeatedly over time—

would give criminals essential insight into the way FBI begins and conducts its investigations. (*Id.*). What's more, it could identify weaknesses in FBI investigations that criminals could exploit. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by withholding sensitive investigative file numbers. *Poitras v. DHS*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018); *Carpezzi*, 2023 WL 2648166, at *9-10.

   2.   *Identities of FBI Squads—FBI (b)(7)(E)-2*

The identities and locations of FBI squads provide insight into investigations that could disrupt their effectiveness. (Ex. 1, FBI Decl. at 54-55). By disclosing this information, FBI would be providing data about squad locations and investigative interest areas, which would allow criminals to learn about investigative patterns. (*Id.*). This would enable individuals to avoid or counter the strategies employed by squads— especially those with highly specialized areas of expertise like financial crimes. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by protecting methods and techniques related to the identity of FBI squads. *Reporters Comm. for Freedom of Press v. FBI* (*Reporters 2*), No. 17-1701 (RC), 2022 WL 13840088, at *7 (D.D.C. Oct. 21, 2022).

   3.   *FBI Emails, Phone Numbers, and Passcodes—FBI (b)(7)(E)-3 and (b)(7)(E)-34*

FBI withheld internal email addresses, nonpublic phone numbers, and internal email passcodes (i.e., passwords for encrypted data shared between agencies). (Ex. 1, FBI Decl. at 55). Release of this information poses a significant cybersecurity risk to FBI, which is an obvious target for hackers and cyber-attacks. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by protecting sensitive

electronic data. *Garza v. USMS*, No. 16-0976, 2018 WL 4680205, at *16 (D.D.C. Sept. 28, 2018).

### 4.    Collection and Analysis of Information—FBI (b)(7)(E)-4

The methods FBI uses to collect and analyze information for investigative purposes are exempt. (Ex. 1, FBI Decl. at 56). To disclose the methods and sources of how FBI collects information would show the manner in which it conducts investigations. (*Id.*). This would easily allow criminals to circumvent FBI methods. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by withholding information about its methods of collecting and analyzing information. *Gatson v. FBI*, No. 15-5068, 2017 WL 3783696, at *14 (D.N.J. Aug. 31, 2017).

### 5.    Focus of Investigations—FBI (b)(7)(E)-5

FBI protected the focuses of specific public corruption and organized crime investigations. (Ex. 1, FBI Decl. at 56-57). This nonpublic information would disrupt FBI's investigations of those targets, prevent FBI's efforts to pursue interrelated investigations, disclose key investigative strategies, and reveal intelligence and evidence gathering capabilities. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by withholding the focuses of specific investigations. *Reporters 2*, 2022 WL 13840088, at *8.

### 6.    Database Information and Search Results—FBI (b)(7)(E)-7

It was proper to withhold the identity of sensitive, nonpublic investigative databases and search results from those databases. (Ex. 1, FBI Decl. at 57-59). If FBI revealed that information, criminals would have insight into the informational

capabilities of FBI investigations, along with the strategies it employs in response to specific circumstances. (*Id.*). This nonpublic information would not only expose gaps in FBI investigations; it would also give a roadmap for exploitation during cyber-attacks. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by protecting the identities of sensitive databases and search results. *Mermerlstein*, 2021 WL 3455314, at *14.

### 7.    Surveillance Techniques—FBI (b)(7)(E)-9

FBI withheld information about the targets, locations, monitoring, and types of surveillance devices used to investigate Luthmann. (Ex. 1, FBI Decl. at 59-60). These are techniques FBI still uses to conduct investigations supporting its mission. (*Id.*). Disclosing the who, what, when, where, and how of surveillance in this case would allow criminals to develop strategies to avoid detection. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by withholding specific surveillance information. *Gatson*, 2017 WL 3783696, at *13.

### 8.    Targets of Pen Register or Trap and Trace—FBI (b)(7)(E)-10

Data related to the targets of pen registers or trap and trace devices is exempt. (Ex. 1, FBI Decl. at 60). The nonpublic information about how those techniques were used would reveal ways to undermine and avoid FBI's use of such devices. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by protecting the targets of pen registers or trap and trace devices. *Buckley*, 2021 WL 5371463, at *18.

9.      *CART Data—FBI (b)(7)(E)-11*

FBI protected reports compiled by its Computer Analysis Response Team ("CART"). (Ex. 1, FBI Decl. at 60-61). CART provides FBI (and other law enforcement) with digital forensics and technical capabilities, including the analysis and extraction of data from a variety of electronic devices or media. (*Id.*). To disclose the highly technical methods of CART would hinder FBI's difficult task of combatting crime in the digital age. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by withholding CART reports and data. *Mermerlstein*, 2021 WL 3455314, at *13.

10.     *Collection and Analysis of BSA Information—FBI (b)(7)(E)-12*

Along with the reasons discussed in Section B.5. above, information related to collection and analysis of BSA data is exempt. (Ex. 1, FBI Decl. at 61-62). The disclosure of this nonpublic information would enable criminal to evade FBI investigations by learning how it collects and analyzes financial data. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by safeguarding techniques of collecting and analyzing BSA information. *Yunes*, 2016 WL 4506971, at *7.

11.     *Investigative Code Names—FBI (b)(7)(E)-15*

FBI protected nonpublic codenames used by FBI. (Ex. 1, FBI Decl. at 62). Secrecy of codenames and the details they reveal during investigations is essential. (*Id.*). To disclose that nonpublic information would jeopardize FBI's operational effectiveness. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention

of law by withholding investigation codenames. *Rios v. United States*, No. 15-cv-1183-TSC, 2021 WL 430053, at *1-2 (D.D.C. Feb. 8, 2021).

### 12.    *Undercover Operations—FBI (b)(7)(E)-16*

Undercover operations are critical to the success of FBI's mission, and secrecy of those operations' detail is paramount. (Ex. 1, FBI Decl. at 62-63). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by protecting the nonpublic details about FBI's undercover operations. *Reporters 2*, 2022 WL 13840088, at *8-9.

### 13.    *Monetary Payments—FBI (b)(7)(E)-19*

Information about the money FBI personnel requests or pays related to investigative techniques reveals how FBI allocates resources and pursues investigations. (Ex. 1, FBI Decl. at 63-64). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by safeguarding FBI's investigative spending patterns and priorities. *Reporters 2*, 2022 WL 13840088, at *9.

### 14.    *Source Reporting—FBI (b)(7)(E)-20*

Source reporting documents contain investigative information related to confidential sources. (Ex. 1, FBI Decl. at 64-65). Disclosure of those documents would identify the scope of information collected from sources along with their identities and techniques, which would threaten FBI investigations. (*Id.*). So FBI properly invoked Exemption 7(E) to prevent circumvention of law by protecting source reporting information. *Buckley v. DOJ*, No. 19-CV-319F, 2021 WL 5371463, at *18 (W.D.N.Y. Nov. 18, 2021).

15.    *Wiretap Application, Order, and Attachments*

EOUSA withheld a wiretap application, order, and attachments compiled for investigation and prosecution. (Ex. 4, EOUSA Decl. at 10-11).    The application contains investigatory details regarding how DOJ justifies its decision to pursue a wiretap, which would assist individuals attempting to evade the investigatory technique.   (*Id.*). The wiretap documents were therefore appropriately withheld. *Canning v. DOJ*, No. CV 11-1295(GK), 2017 WL 2438765, at *11 (D.D.C. June 5, 2017).

16.    *Conclusion*

As stated, Exemption 7(E) permits withholding the information discussed above.

## G.    Sealed Records

Sealed filings from other courts "are not categorically exempt from disclosure under FOIA." *Borda v. DOJ*, 306 F. Supp. 3d 306, 315 (D.D.C. 2018). Instead, courts ask "whether the seal *prohibits* the agency from disclosing the records." *Id.* (cleaned up). An agency can show sealed records are exempt with "extrinsic evidence about the intended scope of a purported sealing order." *Jud. Watch, Inc. v. DOJ*, 813 F.3d 380, 383 (D.C. Cir. 2016).

Here, the Southern District of New York sealed records related to wiretaps in two cases: No. 1:17-mc-97 and No. 18-M-19-97. The public dockets reveal those records remain under seal. (Ex. 1, FBI Decl. at 65-66). And FBI contacted SDNY— which confirmed the records are still under seal (as of December 12, 2023). (*Id.*).

Similarly, EOUSA and CRM possesses the sealed records. (Ex. 4, EOUSA Decl. at 4); (Ex. 5, CRM Decl. at 5-6). Since FBI, CRM, and EOUSA have no discretion to violate the active sealing order of a federal court, the documents were properly withheld. *Borda*, 306 F. Supp. 3d at 315-16.

To the extent that the seal would not apply, FBI asserts Exemptions 3, 6, 7(C), 7(D), and 7(E). Likewise, EOUSA would assert Exemption 3, 6, 7(C), and 7(E).

## V.    Foreseeable Harm

A withholding is only proper when "the agency reasonably foresees that disclosure would harm an interest protected by" the FOIA Exemptions. 5 U.S.C. § 552(a)(8)(A). So an agency must demonstrate the Exemption applies, along with showing foreseeable harm. *Ecological Rights Found. v. EPA*, 541 F. Supp. 3d 34, 64 (D.D.C. 2021). This requirement applies to all Exemptions above—except for Exemption 3. 5 U.S.C. § 552(a)(8)(A)(i)(II); *Ctr. for Investigative Reporting v. Treasury*, No. 19-cv-08181-JCS, 2021 WL 229309, at*7 (N.D. Cal. Jan. 22, 2021).

Here, Defendants addressed the foreseeable harms where relevant in the analysis above. What's more, the thorough Declarations explain in even more detail the foreseeable harms that Defendants considered when applying any Exemptions. At bottom, there were reasonably foreseeable harms supporting each Exemption.

## VI.    Segregability

"FOIA § 552(b) requires that even if some materials from the requested record are exempt from disclosure, any reasonably segregable information from those documents must be disclosed after redaction of the exempt information unless the

exempt portions are inextricably intertwined with exempt portions." *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) (cleaned up). Agencies comply "with this requirement by (1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." *Emery*, 639 F. Supp. 3d at 116 (cleaned up).

If the agency shows an exemption applies, "it is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material." *Flyers Rights Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1057-58 (D.C. Cir. 2023) (cleaned up). "To rebut this presumption, the requester must offer, at least, evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* at 1058 (cleaned up). "Because FOIA requesters lack access to the withheld records, they will often be unable to rebut this presumption." *Perioperative Servs. and Logistics, LLC v. VA*, 57 F.4th 1061, 1068-69 (D.C. Cir. 2023) (cleaned up).

Here, FBI and the other Defendants submitted detailed declarations explaining the withholdings and their Exemption justifications. What's more, they attested each agency released all material capable of reasonable segregation. (Ex. 1, FBI Decl. at 68-69); (Ex. 2, Commerce Decl. at 4-5); (Ex. 3, ATF Decl. at 2); (Ex. 4, EOUSA Decl. at 4, 11); (Ex. 5, CRM Decl. at 12). Without any reason to call those Declarations into doubt or question Defendants' determinations on segregability, Luthmann cannot rebut the presumption in favor of Defendants.

## VII.   Standard *Glomar*

FBI asserts its standard *Glomar* response—which it must do in every case for the response to retain its purpose. (Ex. 1, FBI Decl. at 69-70).

## VIII.   Conclusion

Defendants undertook an exhaustive review and search in response to Luthmann's FOIA request. Given the circumstances of the request, many Exemptions applied. Still, Defendants produced all records they were allowed to disclose. For all those reasons, the Court should grant summary judgment.

Date: February 1, 2024                    Respectfully submitted,

ROGER B. HANDBERG
United States Attorney


  /s/ Chad Spraker                          /s/ Kevin Huguelet
Chad C. Spraker                            Kevin R. Huguelet
Assistant United States Attorney           Assistant United States Attorney
Chad.Spraker@usdoj.gov                     Kevin.Huguelet@usdoj.gov
USA Number 198                             Florida Bar Number 125690
2110 First Street, Suite 3-137             2110 First Street, Suite 3-137
Fort Myers, Florida 33901                  Fort Myers, Florida 33901
Phone: (239) 461-2200                      Phone: (239) 461-2237

### Certificate of Service

I certify that a copy of this paper was sent by email on February 1, 2024, and will be sent by U.S. Mail on February 2, 2024, to the following:

Plaintiff Richard Luthmann (pro se)
338 Sugar Pine Lane
Naples, FL 34108
luthmannrichard@gmail.com