UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD LUTHMANN,

      Plaintiff,

v.                                    Case No: 2:21-cv-716-JES-NPM

THE    FEDERAL    BUREAU    OF
INVESTIGATION   and   UNITED
STATES    DEPARTMENT    OF
JUSTICE,

      Defendants.

_____

## OPINION AND ORDER

The First Amended Complaint (Doc. #34) seeks agency records from the Federal Bureau of Investigation (the FBI) and the United States Department of Justice (DOJ) pursuant to the Freedom of Information Act (FOIA).  Defendants filed a Motion for Summary Judgment (Doc. #64) on February 1, 2024.  The Court directed plaintiff to file a response, however the deadline to do so has expired and no response has been filed and no extension of time sought.  (Doc. #65.)

**I.**

Plaintiff Richard Luthmann (plaintiff or Luthmann) sought the following records pursuant to the FOIA:

> All materials in any way related to the above-referenced RICHARD LUTHMANN, defendant in the matter of United States v. Luthmann, 17-CR-

> 664 (E.D.N.Y.). This includes all materials
> related in any way into the investigation in
> the above-referenced matter as well as any
> evidence and/or notes collected at interviews
> with third-parties (including but not limited
> to Guy Cardinale and Robert Castro) related to
> the above-referenced matter.

(Doc. #34-2 at 2.)   The administrative history of Luthmann's FOIA request is set forth in detail in the Second Declaration of Michael G. Seidel (Doc. #64-1 at ¶¶ 4-22) and adopted by the Court.   The FBI consulted with the DOJ, Criminal Division (CRM), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Department of Commerce (Commerce), and the DOJ, Executive Office for United States Attorneys (EOUSA).   The FBI then released some, but not all, of the requested records.   (Doc. #34-4, Exh. D.)   Luthmann filed this lawsuit to compel disclosure of the remaining records.

Defendants identified 4,641 pages as responsive to the request.   The FBI released 170 pages in full and 657 pages in part and withheld 3,814 pages in full.   (Doc. #64-1 at ¶ 4.)   Of the records withheld in full, 234 pages were duplicates of other documents produced and 244 are sealed by court order.   Defendants assert that the remaining 3,336 pages withheld in full, along with the 657 pages withheld in part, were properly withheld.   (Doc. #64 at ¶¶ 7-8.)   Defendants seek summary judgment to that effect.

Defendants have submitted the following documentation in support of their motion for summary judgment: (1) a 72-page Second

Declaration of Michael G. Seidel (Doc. #64-1), Section Chief of
the Record/Information Dissemination Section (RIDS), Information
Management Division (IMD), FBI; (2) a 5-page Declaration of Grace
Agyekum (Doc. #64-2), the FOIA Officer for the Bureau of Industry
and Security (BIA), a component of the Department of Commerce
(Commerce); (3) a 3-page Declaration of Ginae Barnett (Doc. #64-
3), Acting Chief, Information Privacy and Governance Division
(IPG) at the ATF; (4) an 11-page Declaration of Nicole Moore (Doc.
#64-4), an Attorney-Advisor in the Freedom of Information
Act/Privacy Act Office (FOIA/PA), a part of the EOUSA; (5) an 18-
page Declaration of Marjorie F. Cole (Doc. #64-5), a trial attorney
in the FOIA/PA unit of the Office of Enforcement Operations (OEO)
in the Criminal Division (CRM) of the DOJ; (6) a 133-page Exemption
Application Index (Vaughn Index) (Doc. #64-6); and (7) a 279-page
exhibit containing copies of various relevant documents (Doc. #64-
7).  The Court refers to these items collectively as the summary
judgment record.

In FOIA cases, courts afford a presumption of good faith to
the unchallenged facts asserted in sworn declarations of
government officials.  Am. Oversight v. United States Dep't of
Justice, 45 F.4th 579, 583 (2d Cir. 2022).  Thus, "[a]n agency can
carry this burden at the summary judgment stage through sworn
declarations that are factually uncontroverted and sufficiently

3

detailed to have the exemption appear 'logical and plausible.'" Id. at 587. All the Declarations filed by defendants are from well-qualified and knowledgeable persons and are sufficiently detailed to establish the exemptions at issue in this case.

For the reasons set forth below, the Court finds defendants have established they are entitled to summary judgment in their favor as to each of the exemptions which have been asserted.

**II.**

"The purpose of FOIA is to encourage public disclosure of information so citizens may understand what their government is doing. Accordingly, the records ... are presumed to be subject to disclosure unless DOJ affirmatively establishes that the requested records fall into one of FOIA's exemptions." Off. of Cap. Collateral Couns., N. Region of Fla. ex rel. Mordenti v. Dep't of Just., 331 F.3d 799, 802 (11th Cir. 2003) (citing Chilivis v. SEC, 673 F.2d 1205, 1210-11 (11th Cir. 1982)). "Once a person has shown that the government has records that should be produced under the FOIA, absent an exemption, the burden of proof is on the government to establish that a given document is exempt from disclosure." Miscavige v. I.R.S., 2 F.3d 366, 367 (11th Cir. 1993) (citing United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 755 (1989)). "'FOIA cases should be handled on motions for summary judgment, once the documents in

issue are properly identified' and after the government has
supplied affidavits or other information describing the
documents." Sikes v. United States Dep't of Navy, 896 F.3d 1227,
1239 (11th Cir. 2018) (quoting Miscavige, 2 F.3d at 369).

Summary judgment is proper where the evidence "shows that
there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a). "A genuine issue of material fact exists 'if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party.'" Edmondson v. Velvet Lifestyles, LLC, 43 F.4th
1153, 1159 (11th Cir. 2022) (quoting Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986)). "If there is not sufficient
evidence for a jury to find for the non-moving party, or 'if the
evidence is merely colorable,' or if it 'is not significantly
probative,' then summary judgment is appropriate." Id. (quoting
Anderson, 477 U.S. at 249-50).

The movant bears the initial burden of demonstrating an
absence of a genuine issue of material fact. Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). "'Once the movant adequately
supports its motion, the burden shifts to the nonmoving party to
show that specific facts exist that raise a genuine issue for
trial.'" James River Ins. Co. v. Ultratec Special Effects Inc.,
22 F.4th 1246, 1251 (11th Cir. 2022) (quoting Dietz v. Smithkline

Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010)).  In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party to the extent supportable by the record. Scott v. Harris, 550 U.S. 372, 380 (2007); Baxter v. Roberts, 54 F.4th 1241, 1253 (11th Cir. 2022).

When a party fails to respond to a motion for summary judgment, a court may properly construe the motion as unopposed pursuant to its local rules.  Simon v. Kroger Co., 743 F.2d 1544, 1547 (11th Cir. 1984); Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988).  Nonetheless, courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004); Dunlap 858 F.2d at 632.  "Even in an unopposed motion, the moving party still bears the burden of identifying 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting Celotex Corp., 477 U.S. at 323).  Thus, while movant's facts can be "deemed admitted," courts "must still review the

movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Id. (citing Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008)).

### III.

Defendants first discuss their partial privacy Glomar[1] response, then the adequacy of the search, the applicable exceptions under the Privacy Act, the several FOIA exemptions which they assert justify their non-disclosures, foreseeable harm, and the segregability of records. (Doc. #64.)  The Court discusses each in turn.

### A. **Glomar** Response

Defendants assert a partial privacy Glomar response to the FOIA request regarding the two identified third-party individuals, Guy Cardinale and Robert Castro.  This response was explained in detail in the Second Declaration of Michael G. Seidel (Doc. #64-1 at ¶¶ 23-30.)  Defendants argue that to acknowledge the existence of such records would reveal personal information about these third-parties that Exemption 6 (5 U.S.C. § 552(b)(6)) and Exemption 7(C) (5 U.S.C. § 552(b)(7)(C)) are intended to protect.  Defendants

---

[1] "A Glomar response neither confirms nor denies the existence of the documents sought in the FOIA request. The term has its origin in a case involving a FOIA request for information on the GLOMAR EXPLORER submarine-retrieval ship." Office of the Capital Collateral Counsel, 331 F.3d at 801 n.3.

further note that no third-party waivers or proof of death have
been provided by plaintiff.[2]   (Docs. #64, pp. 4-6; #64-1 at ¶ 27-
29.)

    "To claim a FOIA exemption, an agency ordinarily must
'acknowledge the existence of information responsive to a FOIA
request and provide specific, non-conclusory justifications for
withholding that information.'"   Knight First Amend. Inst. at
Columbia Univ. v. Cent. Intel. Agency, 11 F.4th 810, 813 (D.C.
Cir. 2021) (quoting Roth v. DOJ, 642 F.3d 1161, 1178 (D.C. Cir.
2011)).  Because Glomar responses are an exception to this general
rule, a Glomar response is permitted only when confirming or
denying the existence of records would itself "cause harm
cognizable under an FOIA exception."   Am. C.L. Union v. C.I.A.,
710 F.3d 422, 426 (D.C. Cir. 2013).  A Glomar response is proper
"if the fact of the existence or nonexistence of agency records
falls within a FOIA exemption."   Wolf v. C.I.A., 473 F.3d 370, 374
(D.C. Cir. 2007).  When a government agency issues a Glomar
response, it must "'provide a public affidavit explaining in as

---

[2] "Where a request for records pertains to a third party, a
requester may receive greater access by submitting either a
notarized authorization signed by that individual or a declaration
made in compliance with the requirements set forth in 28 U.S.C.
1746 by that individual authorizing disclosure of the records to
the requester, or by submitting proof that the individual is
deceased (e.g., a copy of a death certificate or an obituary)."
28 C.F.R. § 16.3(a)(4).

much detail as is possible the basis for its claim that it can be required neither to confirm nor deny the existence of the requested records.'" Ely v. FBI, 781 F.2d 1487, 1493 (11th Cir. 1986) (citation omitted).

Mr. Seidel's Second Declaration (Doc. #64-1) states that the FBI has a longstanding policy to neither confirm nor deny the existence or non-existence of law enforcement records regarding a third party (id. at ¶ 27); that confirmation of the existence of such records could reasonably be expected to subject the third parties to harassment and stigmatization; and that plaintiff failed to articulate any public interest in such disclosure (id. at ¶ 29). Defendants further assert that FOIA Exemption 6 and 7(C) apply to any third-party records that may or may not exist. (Doc. #64, pp. 22-23.)

After careful consideration of the summary judgment record, the Court finds that Mr. Seidel's Second Declaration is sufficient, and that the Glomar response was appropriate. Additionally, the Court finds that FOIA Exception 6 and Exception 7(C) (as discussed in more detail later) apply to any requested records concerning the two third-party individuals if such records exist. Accordingly, the Court finds that the partial Glomar response was proper as to records which may or may not exist related to Guy Cardinale and Robert Castro.

**B. Adequacy of Search**

Defendants concede that they are required to establish the adequacy of their search for the requested records. (Doc. #64, p. 6.)  As the Eleventh Circuit has stated:

> To establish the adequacy of a search for responsive documents, a government agency must show beyond a material doubt that it has conducted a search reasonably calculated to uncover all relevant documents. [] The agency may meet this burden by producing affidavits of responsible officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith. [] If the agency satisfies this burden, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith.

Broward Bulldog, Inc. v. U.S. Dep't of Justice, 939 F.3d 1164, 1176 (11th Cir. 2019) (internal quotation marks and citations omitted).  See also Transgender Law Ctr. v. Immigration & Customs Enf't, 46 F.4th 771, 779-80 (9th Cir. 2022).

The Second Declaration of Michael G. Seidel sets forth in detail the FBI's Central Records System and the search methodology used in responding to FOIA requests in general and Luthmann's request in specific.  (Doc. #64-1 at ¶¶ 31-40.)  In brief, the FBI's Central Records System (CRS) has a searchable system with records indexed and a non-searchable portion.  In response to plaintiff's request, the FBI searched "Luthmann, Richard" as a search term with a cut-off date of May 17, 2021.  (Doc. #64-1 at

¶¶ 31 & 39.)   The FBI exempted law enforcement investigative records compiled during the investigation of plaintiff for wire fraud and collection of credit by extortion for the criminal case in New York (id. at ¶ 42) and denied access to certain records pursuant to Privacy Act Exemption (j)(2).   The FBI consulted with the CRM, ATF, Commerce, and EOUSA regarding responsive documents. (Id. at ¶¶ 133-136.)   The FBI did not withhold any reasonably segregable, nonexempt portions of records from plaintiff.   (Id. at ¶ 43.)   The FBI processed the records under the FOIA to achieve maximum disclosure. (Id.)   Declarations from the representatives of the consulted agencies confirm the consultations and the results.   (Doc. #64-4, ¶¶ 5-7; Doc. #64-5, ¶¶ 2-9.)

The Court finds that Mr. Seidel is the responsible official and that all the Declarations submitted by defendants were detailed, nonconclusory, and submitted in good faith, as required by Broward Bulldog, Inc., 939 F.3d at 1176.   After a careful review of the Second Declaration of Michael G. Seidel and the other pertinent parts of the summary judgment record, the Court finds beyond a material doubt that defendants made searches reasonably calculated to uncover all relevant records.   Additionally, the Court finds that plaintiff has not shown that the searches were not reasonable or were not conducted in good faith.

**C. Privacy Act Considerations**

The FBI states that when an individual files a FOIA request about himself the FBI firsts considers the request under the Privacy Act. (Doc. #64-1 at ¶ 41.)  The FBI did so in this case. (Id. at ¶ 42.)

The Privacy Act generally gives a person the right to obtain records related to himself unless an exemption applies.  One such exemption is Exemption (j)(2), which allows the head of a qualifying agency such as the FBI to promulgate rules to "exempt any system of records within the agency" (with certain exceptions) if the system of records consists of qualifying information or reports.  5 U.S.C. § 552a(j)(2).[3]  The FBI has exercised this

---

[3] The full relevant portion of the statute states:

(j) General exemptions.—The head of any agency may promulgate rules, in accordance with the requirements ... of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1), and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is—

. . .

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and

authority to exempt its Central Records System (CRS) from the individual access provisions of the Privacy Act, subject to its right to waive the exemption where compliance does not "appear to interfere with or adversely affect the overall law enforcement process." 28 C.F.R. § 16.96(a)(1).

Records contained in the CRS qualify under this exemption if they constitute law enforcement records within the meaning of the Privacy Act. The agency bears the burden of demonstrating that a record is such a law enforcement record. Doe v. Fed. Bureau of Investigation, 936 F.2d 1346, 1353 (D.C. Cir. 1991). Once an agency does so, the burden shifts to plaintiff to produce evidence that the asserted law enforcement rationale for an investigation was pretextual. Doe, 936 F.2d at 1354. "If the plaintiff fails to rebut the showing of law enforcement purpose, the agency is entitled to summary judgment." Id.

---

consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

The FBI withheld records contained in the CRS which had been compiled during the investigation and prosecution of Luthmann for fraud and extortion.  The EOUSA also withheld certain wiretap records pursuant to this exemption.  (Doc. #64-4 at ¶ 9-11.)  After careful consideration of the summary judgment record, the Court finds that defendants have met their burden of showing that the responsive records were law enforcement records.  The systems of records were maintained by agencies which perform as their principal function activity pertaining to the enforcement of criminal law, and the systems of records consist of information compiled for one of the criminal law enforcement purposes listed in (j)(2)(A)-(C).  Additionally, the Court finds that plaintiff has failed to produce any evidence that the responsive records were not law enforcement records or that the law enforcement rationale for the investigation was pretextual.  Thus, the nondisclosures were proper under the Privacy Act.

**D. FOIA Exemptions**

Defendants next discuss the FOIA exemptions they relied upon in withholding various records.  The Court discusses each in turn.

The FOIA codified "a strong public policy in favor of public access to information in the possession of federal agencies." News-Press v. U.S. Dep't of Homeland Sec., 489 F.3d 1173, 1190 (11th Cir. 2007) (citation and internal quotation marks omitted).

14

> After an agency receives a request for records, it may withhold information from responsive documents only if it falls within one of nine statutory exemptions. [] Because the purpose of the Act is to encourage public disclosure of information, responsive documents are presumed to be subject to disclosure unless an agency affirmatively establishes that the requested records fall into one of the exemptions. [] But the Act also expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of the Act's purposes and policies as its disclosure requirement.

Broward Bulldog, Inc., 939 F.3d at 1175 (internal quotations marks punctuation and citations omitted).

The Second Declaration of Michael G. Seidel describes in detail the FOIA review process utilized by defendants in determining which documents could be withheld under the FOIA. (Doc. #64-1 at ¶¶ 43-46, 137, 138.)  Other Declarations supplement and support the Second Declaration. Defendants rely upon the exemptions discussed below.

**(1)   Exemption 3**

Exemption 3 permits the agency to withhold information "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types

of matters to be withheld." 5 U.S.C. § 552(b)(3).[4] "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents" and more on "the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978).  When assessing whether a statute specifically exempts matters from disclosure for purposes of Exemption 3, a court asks two questions: "Does the statute meet Exemption 3's requirements? And does the information that was withheld fall within that statute's coverage?"  Newport Aeronautical Sales v. Dep't of the Air Force, 684 F.3d 160, 165 (D.C. Cir. 2012) (citing Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009)).

Defendants report that the FBI, EOUSA, CRM and Commerce claimed Exemption 3 to withhold the following six categories of information protected by various statutes: (1) grand jury information; (2) pen register information; (3) wiretap information; (4) intelligence information; (5) bank records; and (6) export control enforcement information.  (Doc. #64, pp. 9-14.)

---

[4] The OPEN FOIA Act of 2009 established an additional requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009, [must] specifically cite[] to this paragraph" in order to qualify under Exemption 3.  5 U.S.C. § 552(b)(3).  All the statutes relied upon by defendants (and Rule 6(e)) were enacted prior to 2009.

Relevant Declarations were submitted by Michael G. Seidel (Doc. #64-1), Grace Agyekum (Doc. #64-2); Nicole Moore (Doc. #64-4); and Marjorie F. Cole. (Doc. #64-5). The Court discusses the categories of information in the same order as did defendants.

###### (a)   Grand Jury Information

The law has long recognized that grand jury proceedings are to be kept secret, and this secrecy principle has been codified in Rule 6(e) of the Federal Rules of Civil Procedure. <u>Pitch v. United States</u>, 953 F.3d 1226, 1232 (11th Cir. 2020) (en banc). "Rule 6(e) is exhaustive, and [] district courts do not possess inherent, supervisory power to authorize the disclosure of grand jury records outside of Rule 6(e)(3)'s enumerated exceptions." <u>Id.</u> at 1229. Rule 6(e) prohibits certain designated persons (including government attorneys) from disclosing "a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). "[U]nless and until the disclosure of grand jury materials is authorized, Rule 6(e)(6) provides that 'records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.'" <u>In re Petition for Order Directing Release of Records</u>, 27 F.4th 84, 88 (1st Cir. 2022) (quoting Fed. R. Crim. P. 6(e)(6)).

"[R]equests for documents related to grand jury investigations implicate FOIA's third exemption…." Lopez v. DOJ, 393 F.3d 1345, 1349 (D.C. Cir. 2005). Rule 6(e) qualifies as a statute under Exemption 3 because Congress has enacted it into positive law. Murphy v. Executive Office for U.S. Attorneys, 789 F.3d 204, 206 (D.C. Cir. 2015). Information related to a grand jury matter may be withheld under Exemption 3 "if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses…." Hodge v. FBI, 703 F.3d 575, 580 (D.C. Cir. 2013) (internal quotation marks and citation omitted). The Court finds that Rule 6(e) meets the requirements of Exemption 3 because nondisclosure under the Rule involves no agency discretion.

The Second Declaration of Michael G. Seidel establishes that otherwise responsive records which were withheld pursuant to Exemption 3 included the names of grand jury subpoena recipients; information identifying subpoenaed records; copies of subpoenaed records; records of interviews and summaries related to individuals the grand jury subpoenaed to testify; grand jury subpoena requests and returns; and documents analyzing and summarizing subpoenaed information. (Doc. #64-1 at ¶¶ 49-52.) Additionally, defendants withheld the application, order, and

attachments for the Title III wiretap whose results were presented to the grand jury.  (Doc. #64-4 at ¶¶ 12-15.)

After a careful review of the summary judgment record, the Court finds that the withheld or redacted material falls within Rule 6(e)'s coverage and would tend to reveal secret aspects of the grand jury's investigation, including the identities of witnesses.  Therefore, the material was properly withheld under Exemption 3.

**(b)  Pen Register Information**

A pen register is a device installed on a telephone line to enable recording the telephone numbers dialed on that line, but not the conversation.  The Pen Register Act, 18 U.S.C. §§ 3121-3126, includes a requirement that "[a]n order authorizing or approving the installation and use of a pen register or a trap and trace device" shall "be sealed until otherwise ordered by the court."  18 U.S.C. § 3123(d).  This meets Exemption 3's first requirement.  Labow v. United States Dep't of Justice, 831 F.3d 523, 527–28 (D.C. Cir. 2016).

The next question is whether the Pen Register Act authorized withholding of the particular information at issue in this case.  The Second Declaration of Michael G. Seidel states that the pen register information withheld in this case included the identities and phone numbers of those targeted by the pen register, the

location of the pen register, information gathered by the pen register, and court documents relating to the approval of the pen register. (Doc. #64-1 at ¶ 54.) The Declaration of Nicole Moore states that the application, order, and attachments for the Title III wiretaps were withheld under Exemption 3 pursuant to the Pen Register Act. (Doc. #64-4, ¶ 17.)

The Court finds that such information falls within the protection of the Pen Register Act. Labow v. U.S. Dep't of Justice, 278 F. Supp. 3d 431, 441 (D.D.C. 2017). After a careful review of the summary judgment record, the Court finds that the pen register information and records were properly withheld under Exemption 3 pursuant to the Pen Register Act.

(c) **Wiretap Information**

The Declaration of Marjorie F. Cole describes the process by which a wiretap order is obtained. (Doc. #64-5, ¶ 9.) Intercepted communications obtained pursuant to the federal wiretap statute fall "squarely within the scope" of Exemption 3. Lam Lek Chong v. DEA, 929 F.2d 729, 733 (D.C. Cir. 1991). Exemption 3 has also been extended to materials submitted to a court in support of a request for a wiretap. Ewell v. U.S. Dep't of Justice, 153 F. Supp. 3d 294, 304-05 (D.D.C. 2016). See also House v. U.S. Dep't of Justice, 197 F. Supp. 3d 192, 206 (D.D.C. 2016)(same).

20

Defendants withheld the wiretap application, materials included with the prosecutors' application for court authorization for the wiretap, the wiretap order and attachments, identities of wiretap targets, and the information obtained by the wiretap. (Doc. #64-1 at ¶ 56; Doc. #64-4 at ¶ 16; Doc. #64-5 at ¶ 10.) After a careful review of the summary judgment record, the Court finds that the wiretap records were properly withheld under Exemption 3 and defendants have established that both prongs of Exemption 3 have been satisfied.

**(d)   Intelligence Information**

A portion of the National Security Act of 1947 protects "intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Section 3024(i) has been broadly construed to protect information that "*relates* to intelligence sources and methods" and information which "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." Khatchadourian v. Def. Intelligence Agency, 453 F. Supp. 3d 54, 87 (D.D.C. 2020) (citation omitted) (emphasis in original). This is a "'near-blanket FOIA exemption which covers public and non-public information because 'bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'" Id. at 88 (quoting

<u>Leopold v. Cent. Intelligence Agency</u>, 106 F. Supp. 3d 51, 57-58 (D.D.C. 2015)).

The Second Declaration of Michael G. Seidel states that the FBI withheld information that would reveal intelligence sources and methods.  (Doc. #64-1 at ¶¶ 57-60.)  After careful review of the summary judgment record, the Court finds that such information was properly withheld under Exemption 3.

   **(e)  Bank Records**

The Bank Secrecy Act (BSA) exempts "report[s] and records of reports" collected under the BSA from disclosure under FOIA. 31 U.S.C. § 5319.  The BSA is a proper basis for invoking Exemption 3.  <u>Rosenberg v. U.S. Dep't of Immigration & Customs Enf't</u>, 13 F. Supp. 3d 92, 116 n.9 (D.D.C. 2014); <u>Yunes v. United States Dep't of Justice</u>, 263 F. Supp. 3d 82, 86-87 (D.D.C. 2017) (citing <u>Rosenberg</u>). Exemption 3 can extend to Financial Crimes Enforcement Network (FinCEN) information.  <u>Ortiz v. United States Dep't of Justice</u>, 67 F. Supp. 3d 109, 118 (D.D.C. 2014).

The Second Declaration of Michael G. Seidel states that during the criminal investigation of Luthmann, BSA information was obtained from FinCEN and that this information was withheld from disclosure.  (Doc. #64-1 at ¶¶ 61-64.)  After careful review of the summary judgment record, the Court finds that this information was properly withheld under Exemption 3.

**(f)  Export Control Enforcement Information**

The Export Administration Act of 1979 ("EAA") provides for the confidentiality of export licensing information obtained by the government under the EAA.  50 App. U.S.C. § 2411(c)(1).  Specifically, the EAA states that "information obtained for the purpose of consideration of, or concerning, license applications under this Act ... shall be withheld from public disclosure unless the release of such information is determined by the Secretary to be in the national interest." 50 U.S.C. § 2411(c). See also 15 C.F.R. Part 736, Supp. 2 (Administrative Order One) (2000).  This provision of the EAA "clearly qualifies as an exemption statute for purposes of FOIA Exemption 3."  Times Pub. Co. v. U.S. Dep't of Commerce, 236 F.3d 1286, 1289 (11th Cir. 2001).

The Declaration of Grace Agyekum (Doc. #64-2) states that Commerce withheld seven Reports of Investigation compiled by the Office of Export Enforcement of the Bureau of Industry and Security (BIS) comprising 141 pages of records originating from the Bureau of Industry and Security (BIS).  (Id. at ¶¶ 3-4.)  Each Report of Investigation contained notes of an interview in connection with an investigation of Omni Metal Corporation for potential violations of export control laws and regulations.  Neither the Secretary of Commerce nor the Under Secretary of Commerce for Industry or Security had made a determination that it was in the

national interest to release these documents.  (Id. at ¶¶ 4-5.)
Therefore, Commerce determined the Reports were fully exempt from
disclosure pursuant to Exemption 3, and no non-exempt information
could be segregated.  (Id. at ¶¶ 6-7.)  Commerce also determined
that the names of the Special Agents and the ASAC who reviewed the
reports were exempt under Exemption 7(C).  (Id. at ¶ 9.)

After careful review of the summary judgment record, the Court
finds that the records were properly withheld under Exemption 3.
The Court also finds that the names of the special agents were
exempted pursuant to Exemption 7(C).

**(g)   Conclusion**

In sum, after careful review of the summary judgment record,
the Court finds that all records withheld under Exemption 3 were
properly withheld.  The statutes covering each category of records
provide that matters may be withheld from the public in a manner
which leaves no discretion on the issue, or establishes particular
criteria for withholding matters, or refers to particular types of
matters to be withheld.  All withheld records fall within the scope
of the respective statutes.

**(2)   Exemption 5**

Exemption 5 authorizes an agency to withhold from disclosure
"inter-agency or intra-agency memorandums or letters that would
not be available by law to a party other than an agency in

litigation with the agency." 5 U.S.C. § 552(b)(5). "The test under Exemption 5" is not whether such documents might ever be disclosed in civil litigation, but "whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." FTC v. Grolier Inc., 462 U.S. 19, 26 (1983) (citation omitted). "Courts universally read Exemption 5 to mean that agency documents that would be privileged in ordinary civil discovery are also protected from disclosure under FOIA." Am. Oversight, 45 F.4th at 588 (citation omitted). Exemption 5 encompasses records "normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). "As the text indicates—albeit in a less-than-straightforward way—this exemption incorporates the privileges available to Government agencies in civil litigation." United States Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 267 (2021).

Exemption 5 includes the deliberative process privilege, the attorney-client privilege, and the work product privilege. Am. Oversight, 45 F.4th at 588-91; Protect Democracy Project, Inc. v. Nat'l Sec. Agency, 10 F.4th 879, 885 (D.C. Cir. 2021). The deliberative process privilege "is designed both to minimize public confusion about agency rationales and actions", Broward Bulldog, Inc. 939 F.3d at 1194, and "to allow agencies to freely explore possibilities, engage in internal debates, or play devil's

25

advocate without fear of public scrutiny," Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1277 (11th Cir. 2004). The deliberative process privilege protects only "deliberative" materials which are "predecisional." Broward Bulldog, Inc., at 1195; Moye, at 1277.

The attorney-client privilege protects "disclosures made by a client to his attorney, in confidence, for the purpose of securing legal advice or assistance." Knox v. Roper Pump Co., 957 F.3d 1237, 1248 (11th Cir. 2020); Drummond Co., Inc. v. Conrad & Scherer, LLP, 885 F.3d 1324, 1334 (11th Cir. 2018). "Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." United States v. Jicarilla Apache Nation, 564 U.S. 162, 170 (2011).

The attorney work product privilege protects from discovery in litigation "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). To qualify for work-product protection, "documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" Am. Civil Liberties Union of N. California v.

United States Dep't of Justice, 880 F.3d 473, 484 (9th Cir. 2018) (citation omitted).  Records that contain attorney work product may be withheld pursuant to FOIA Exemption 5.  Miccosukee Tribe of Indians of Florida v. United States, 516 F.3d 1235, 1263 (11th Cir. 2008).

     The FBI and CRM assert Exemption 5 to protect certain internal communications and handwritten interview notes.  (Doc. #64, pp. 14-19.)  The Second Declaration of Michael G. Seidel states the FBI withheld interagency deliberations which included feedback, proposals, and discussions on final agency action; documents concerning discussions between the FBI, U.S. Attorney's Office, and Assistant U.S. Attorneys concerning preindictment investigations, wiretaps, indictments, prosecutions, pretrial activities, and trials, including litigation and prosecutorial strategy; handwritten notes taken by an agent during a witness interview, which were later used to prepare an official FD-302 interview report; and attorney-client privileged records of communications between the DOJ and FBI lawyers and employees which were for the purpose of securing legal advice. (Doc. #64-1 at ¶¶ 68-74.)  CRM withheld attorney work-product materials created by DOJ attorneys during investigations of individuals for violation of federal criminal law and exchanged internally between CRM

lawyers and externally between CRM and USAO lawyers.  (Doc. #64-5 at ¶¶ 14-18.)

After a careful review of the summary judgment record, the Court finds that the documents were properly withheld pursuant to Exemption 5 because they "would not be available by law to a party other than an agency in litigation with the agency" within the meaning of 5 U.S.C. § 552(b)(5).

**(3)  Exemptions 6 and 7(C)**

The FBI, EOUSA, and CRM withheld documents pursuant to Exemption 6 and Exemption 7(C).  Defendants discuss both exemptions together, focusing on Exemption 7(C).  (Doc. #64, pp. 19-24.)

Exemption 6 excludes from FOIA requests "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The phrase "similar files" has a broad meaning and includes any detailed Government records on an individual that can be identified as applying to that individual.  News-Press, 489 F.3d at 1197.  Exemption 6 "requires the Court to balance 'the individual's right of privacy' against the basic policy of opening 'agency action to the light of public scrutiny.'"  United States Dep't of State v. Ray, 502 U.S. 164, 175 (1991) (citation omitted).  See also Office of Capital Collateral Counsel, 331 F.3d at 802-03 (citing Ray).  To determine whether Exemption 6 applies, the court

asks: (1) whether the withheld material was within "personnel, medical, or similar files"; and, if so, (2) whether "a balancing of individual privacy interests against the public interest in disclosure reveals that disclosure of the information would constitute a clearly unwarranted invasion of personal privacy." News-Press, 489 F.3d at 1196-97 (quotation marks and citation omitted).

Exemption 7(C) overlaps with Exemption 6, although Exemption 7(C) is "more protective of privacy" than Exemption 6. U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 496 n.6, (1994). See also Office of the Capital Collateral Counsel, 331 F.3d at 803 n.6 (Exemption 7(C) is broader than Exemption 6). Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that ... production ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To meet its burden of establishing that Exemption 7(C) applies, the agency must demonstrate that the record or information was compiled for law enforcement purposes and (1) disclosure could "reasonably be expected to constitute an unwarranted invasion of privacy" and (2) the "personal privacy interest" is not "outweighed by the public interest in disclosure." Elec. Privacy Info. Ctr. v. United States Dep't of Justice, 18 F.4th 712, 718 (D.C. Cir. 2021) (quoting Nat'l

<u>Archives & Recs. Admin. v. Favish</u>, 541 U.S. 157, 160 (2004)).  "The term 'unwarranted' requires [courts] to balance the [relevant] privacy interest against the public interest in disclosure." <u>Favish</u>, 541 U.S. at 171.  If the government establishes that certain information implicates a "personal privacy" interest, the requestor "must show that the public interest sought to be advanced is a significant one" and that "the information is likely to advance that interest." <u>Broward Bulldog, Inc.</u>, 939 F.3d at 1183 (citing <u>Favish</u>).  "'[W]hereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion.' <u>Favish</u>, 541 U.S. at 166 (quoting <u>U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press</u>, 489 U.S. 749, 756 (1989)).

The Second Declaration of Michael G. Seidel establishes that the records or information at issue were compiled for law enforcement purposes.  (Doc. #64-1 at ¶¶ 75-76.)  The Declaration also states that defendants withheld personal information about FBI agents and staff assigned to the investigation; information regarding third parties who provided information to the FBI, or who were mentioned in the records, or who were identified for investigative interest; personal information about non-FBI federal employees; personal information about local government personnel;

and personal information about local law enforcement personnel. (Id. at ¶¶ 81-91.)

The Declaration of Ginae Barnett (Doc. #64-3) states that the one-page record she reviewed was compiled for law enforcement purposes, was released in part to Luthmann, but was redacted to withhold the names of individual third-parties, serial numbers of firearms (which can be connected to individual firearms owners), and the names of non-supervisory agents or officers. (Id. at pp. 1-2.)

The Declaration of Nicole Moore (Doc. #64-4) states that she withheld the public identification of DOJ employees, their email addresses, direct phone lines, and cell phone numbers, as well as the signature of the officer who issued plaintiff's warrant. This was based on concerns about harassment and identify fraud. (Id. at ¶¶ 18-20.) Moore noted that even though some of the EOUSA records had been disclosed to Luthmann pursuant to criminal discovery rules, disclosure through the FOIA process was prohibited by Exemption 7(C). (Id. at ¶¶ 22-23.)

The Declaration of Marjorie F. Cole (Doc. #64-5) states that 62 pages of records were reviewed, and 8 pages of records were withheld in part because they contained identifying and contact information of third-party individuals, including cell phone

subscribers and/or targets of the criminal investigation that appeared in law enforcement documents. (Id. at ¶¶ 9, 20-21, 23.)

After careful review of the summary judgment record, the Court concludes that defendants have established that all the records were created for law enforcement purposes and were "personnel" or "similar files", as required by § 552(b)(6) and/or (7)(C). Defendants established that disclosure of any of this information would constitute a clearly unwarranted invasion of personal privacy. The Court must therefore balance the individual's right of privacy against the policy of opening agencies' actions to public scrutiny. In applying the required balancing process, the Court finds there is no substantial public interest in the disclosure plaintiff seeks but there are important privacy interests by the government personnel.

**(4) Exemption 7(D)**

Exemption 7(D) protects "records or information compiled for law enforcement purposes, but only to the extent that ... production ... could reasonably be expected to disclose the identity of a confidential source" and "in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

"To establish that the exemption applies, the government must prove that 'the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" Broward Bulldog, Inc., 939 F.3d at 1188 (citation omitted).  The "nature of an informant's ongoing relationship with the [agency]," "the character of the crime at issue," and "the source's relation to the crime may support a reasonable inference of an assurance of confidentiality." Id. (internal quotation marks and citation omitted).

The Second Declaration of Michael G. Seidel describes the FBI's use of confidential sources.  (Doc. #64-1 at ¶¶ 92-94.)  This Declaration states that defendants withheld its permanent symbol numbers assigned to confidential sources; and the names, identifiers, and other information about third parties who were under express assurances of confidentiality; the names, identifiers, and other information of third parties for whom an assurance of confidentiality could be implied.  (Id. at ¶¶ 95-103.)  The Declaration also establishes why each category of information was withheld.  (Id.)  After careful review of the summary judgment record, the Court concludes that defendants have established that withholding the records and information was proper under Exemption 7(D).

**(5)  Exemption 7(E)**

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that ... production ... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "The phrase 'techniques and procedures,' [] refers to how law enforcement officials go about investigating a crime." Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010) (citation omitted).  The purpose of this exemption is to shield sensitive law enforcement techniques from disclosure to prevent criminals from "circumventing future [law enforcement]" investigations.  Blackwell v. Fed. Bureau of Investigation, 680 F. Supp. 2d 79, 92 (D.D.C. 2010), aff'd, 646 F.3d 37 (D.C. Cir. 2011).  Law enforcement techniques or procedures that are well-known to the public cannot be shielded from disclosure under this exemption. Broward Bulldog, Inc., 939 F.3d at 1191 (collecting cases). Nonetheless, Exemption 7(E) protects information that would reveal facts about well-known techniques or their usefulness that are not

generally known to the public, as well as other information when disclosure could reduce the effectiveness of such techniques. Id.

The Second Declaration of Michael G. Siedel states that defendants withheld the FBI's sensitive investigative file numbers; the identity and locations of FBI squads; FBI internal email addresses, nonpublic phone numbers, and internal email passcodes; the FBI methods used to collect and analyze information for investigative purposes; the focuses of specific public corruption and organized crime investigations; the identity of sensitive, nonpublic investigative databases and search results from those databases; information about the targets, locations, monitoring, and type of surveillance devices used to investigate Luthmann; data related to the targets of pen registers or trap and trace devices; Computer Analysis Response Team (CART) reports; information related to the collection and analysis of BSA data; nonpublic codenames used by the FBI; nonpublic details about FBI undercover operations; information about money which FBI personnel request or pay related to investigative techniques; source reporting documents relating to confidential documents; and wiretap application, order, and attachments.  (Doc. #64-1 at ¶¶ 104-131.)  The Declaration also discusses the justification for the non-disclosures.  (Id.)

The Declaration of Nicole Moore (Doc. #64-4) states that information contained in wiretap applications are investigatory details about how the DOJ justifies its pursuit of wiretap orders, which information is not known to the public and whose disclosure would assist persons in taking evasive action or countermeasures to circumvent the utility of wiretaps. (Id. at ¶ 26.)

After a careful review of the summary judgment record, the Court finds that non-disclosure of these records was proper under Exemption 7(E). Defendants have established that the withheld records satisfy the requirements of Exemption 7(E).

**(6)   Sealed Court Records**

The test for determining whether an agency has improperly withheld records placed under seal by a court is "whether the seal, like an injunction, *prohibits* the agency from disclosing the records." Morgan v. United States Dep't of Justice, 923 F.2d 195, 197 (D.C. Cir. 1991) (emphasis in original). This test requires a court to examine: (1) any explicit sealing order from the court which may exist; (2) extrinsic evidence about the intended scope of a purported sealing order; (3) orders of the same court in similar circumstances; and (4) the issuing court's general rules or procedures. Id. at 198. The government has the burden of

proving an order prohibits disclosure. <u>Judicial Watch, Inc. v. U.S. Dept. of Justice</u>, 813 F.3d 380, 383 (D.C. Cir. 2016).

The Second Declaration of Michael G. Siedel states that defendants withheld responsive records which were ordered sealed by the District Courts in the Eastern and Southern Districts of New York and have remained sealed. (Doc. #164-1 at ¶ 132.) Defendants assert that even if the sealing order is lifted, the records were properly withheld under Exemptions 3, 6, 7(C), 7(D), and 7(E). (<u>Id.</u>) The EOUSA reports it withheld two application and orders for wiretaps. (Doc. #64-4, ¶ 8.)

After a careful review of the summary judgment record, the Court finds that records were properly withheld as sealed court records. The Court checked the PACER system for the Eastern District and Southern District of New York Court on May 14, 2024, and discovered that the miscellaneous cases are still under seal. <u>See</u> 1:18-mc97 (E.D.N.Y.) and 1:17-mc-97 (S.D.N.Y.). Even without a sealing order nondisclosure would be proper under Exemptions 3, 6, 7(C), 7(D), and 7(E).

**E. Foreseeable Harm and Segregability**

When a FOIA exemption covers a requested agency record, the FOIA requires that "[a]ny reasonably segregable portion of [that] record ... be provided to any person requesting such record after deletion of the portions which are exempt...." 5 U.S.C. § 552(b).

The FOIA requires that an agency withhold information only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law.  5 U.S.C. § 552(a)(8)(A).

The Second Declaration of Michael G. Siedel states that the FBI's analysis of records responsive under the FOIA is a two-part process. "First, the FBI determines whether a record or a portion of a record is exempt pursuant to one or more FOIA exemptions. Second, if the record or portion thereof is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record or portion thereof." (Doc. #64-1 at ¶ 137.)  The FBI conducted this two-part analysis in connection with Luthmann's request, and only withheld records or portions of records which met both of these criteria. (Id. at ¶¶ 137-138.) The Declaration of Nicole Moore states that no portion of the wiretap applications and orders could be reasonably segregated and released. (Doc. #64-4, ¶ 27.)

After careful review of the administrative record, the Court finds that defendants have complied with their obligations regarding foreseeable harm and segregability.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. #64) is **GRANTED**, and judgment shall enter in favor of defendants on the First Amended Complaint and plaintiff shall take nothing.

2. The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __15th__ day of May 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Plaintiff
Counsel of record